

**U. S. Department of Justice**

*United States Attorney*
*Northern District of Iowa*

---

*111 Seventh Avenue, SE*   *319-363-6333*
*Box 1*   *319-363-1990 (fax)*
*Cedar Rapids, IA 52401-*   *319-286-9258 (tty)*
*2101*

October 21, 2019

Jill Johnston
Assistant Federal Defender
222 Third Avenue SE
Suite 290
Cedar Rapids, Iowa 52402

    Re:   *United States v. Christian M. Delatorre,*
           Case No. 19-cr-1015-CJW

Dear Ms. Johnston:

This letter will serve as a SECOND memorandum of a proposed plea agreement between the United States Attorney's Office for the Northern District of Iowa and Christian M. Delatorre, defendant. All references to the "United States" or "government" in this proposed plea agreement refer to the United States Attorney's Office for the Northern District of Iowa and to no other governmental entity. This plea offer will expire on October 30, 2019, unless the deadline is extended in writing by the government. **The government has made one prior plea offer in this case.**

## CHARGES AND PENALTIES

1. _CD_ Defendant will plead guilty to the pending Indictment filed on May 22, 2019, that charges him with one count of willfully threatening to take the life of, and to inflict seriously bodily harm upon, the President of the United States, in violation of 18 U.S.C. § 871.

2. _CV_ Defendant understands that Count 1 of the Indictment is punishable by the following maximum penalties: (1) not more than five years' imprisonment without the possibility of parole; (2) a fine of not more than $250,000; (3) a mandatory special assessment of $100; and (4) a term of supervised release of not more than three years.

**Government Exhibit 1**
Case 19-CR-01015-CJW
Plea hrg

3. __( V)__ Defendant understands restitution and a term of supervised release following incarceration may be imposed in addition to any other sentence. Defendant further acknowledges that, if defendant violates, at any time, any condition of supervised release, defendant could be returned to prison for the full term of supervised release and the Court is not required to grant credit for any amount of time defendant may have successfully completed on supervised release. Defendant also understands the U.S. Sentencing Guidelines will provide advisory guidance to the Court in determining a sentence in this case.

4. __( V)__ At the time the guilty plea is entered, defendant will admit that defendant is guilty of the charge contained in Count 1 of the Indictment. The U.S. Attorney's Office for this District will file no additional Title 18 criminal charges against defendant based solely upon information now in our possession. If this office becomes aware of evidence of additional crimes warranting criminal prosecution, all information in our possession could be used in such a prosecution.

5. __( V)__ Defendant understands and agrees defendant has the absolute right to plead guilty before a United States District Court Judge. However, if convenient to the Court, defendant agrees to waive and give up this right and to plead guilty before a United States Magistrate Judge. Defendant understands defendant will not be found guilty unless the United States District Court Judge accepts the plea of guilty or adopts a recommendation of the Magistrate Judge to accept such plea. Defendant agrees to execute the attached consent to proceed before the United States Magistrate Judge.

6. __( V)__ Defendant understands and agrees that, consistent with the provisions of 18 U.S.C. § 3143, defendant may be detained pending sentencing. This is regardless of whether a U.S. Magistrate Judge or U.S. District Court Judge presides at the guilty plea hearing and regardless of whether the guilty plea is immediately accepted or formal acceptance is deferred until a later date.

## NON-COOPERATION

7. __( V)__ Defendant understands and concedes that, although defendant is not required by the terms of this plea agreement to testify before any Court or grand jury, the United States may take the prescribed actions under 18 U.S.C. § 6001, *et. seq.* or any other applicable provision of law to compel defendant's testimony. Defendant agrees that, if defendant refuses to testify after being granted immunity and ordered by the Court to testify, defendant may be found to be in contempt of court and may be punished in accordance with Federal Rule of Criminal Procedure 42 and 18 U.S.C. §§ 401 and 402. Further, the United States Attorney's Office shall be permitted to pursue any other action available to require

Jill Johnston
Assistant Federal Defender
*United States v. Christian M. Delatorre*
October 21, 2019
Page 3

defendant's testimony or punish defendant's refusal to testify subsequent to any order requiring defendant to testify. Defendant understands and agrees that, because defendant is not cooperating with the government, the United States will not recommend any decrease under §5K1.1 or any other provision of the United States Sentencing Guidelines or under 18 U.S.C. § 3553(e) or any other provision of law.

## STIPULATION OF FACTS

8. ⟨√⟩ By initialing each of the following paragraphs, defendant stipulates to the following facts. Defendant agrees these facts are true and may be used to establish a factual basis for defendant's guilty plea, sentence, and any forfeiture. Defendant has been advised by defendant's attorney of defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410. Defendant waives these rights and agrees this stipulation may be used against defendant at any time in any proceeding should defendant violate or refuse to follow through on this plea agreement, regardless of whether the plea agreement has been accepted by the Court. Defendant agrees that the stipulation below is a summary of the facts against defendant and does not constitute all of the facts the government would be able to prove at trial and may be able to prove to the Court in accordance with this agreement.

- ⟨√⟩A. Dubuque Mercy Hospital (Mercy) staff called the Dubuque Police Department, on April 27, 2019, regarding defendant making threats against the President.

- ⟨√⟩B. On April 29, 2019, defendant was interviewed by a Secret Service Special Agent (SA) in light of the report from a Mercy psychiatric nurse practitioner indicating defendant had repeatedly made threats to harm the President with specific intent to follow through.

- ⟨√⟩C. Specifically, the psychiatric nurse practitioner reported defendant, made statements that he "will kill [President] Trump." The nurse practitioner indicated the defendant's "anti- social behavior is not being controlled," despite prescribed medications, and medical staff were concerned they could "not control or confine" the defendant.

- ⟨√⟩D. When interviewed by the SA on April 29, 2019, defendant appeared to be in "a happy, pleasant mood," though the defendant said he was taking medication that made him sleepy. Defendant told the SA he attended boot camp for the Army National Guard with twin brothers who were citizens of Nigeria, one of whom was killed in Afghanistan.

Defendant reported he was "infuriated" when President Trump said non-citizen immigrants should return to their countries of origin. Defendant stated for that alone, "he (President Trump) should be killed." He also expressed dissent regarding YouTube videos showing the President mocking people, describing the behavior as, "Un-presidential." He said he hated the President because of his behavior and comments.

E. Additionally, defendant said he believed the President treated victims differently (i.e. visiting some victims of school shootings but not others). He added, "No specific reason why I don't like him... any rich fucker with money isn't held to the same standard and they can get away with anything." Defendant provided other examples including Michael Jackson, Jussie Smollett, and Bustie Badass. Defendant denies he gave these other examples.

F. Defendant told the SA he was "planning and revising his plan to attack President Trump every day for over the past year." He reported feeling confident in the effectiveness of his plan and noted he intended to carry out his plan upon release from the hospital. Defendant told the SA he researched how to make bombs and saved the ingredients on his cell phone, which he reviewed daily. Hospital staff provided the cell phone to the SA. The phone contained a list of bomb ingredients, including: semtex, diesel oil, and ammonium nitrate.

G. Defendant said he went to Washington D.C. on one occasion but would be willing to return to "act like a tourist to advance the perimeter." He said he revised his plan to occur in the evening in order to "use the darkness to his advantage against security of the White House." He said he would drop four drones, fastened with bombs, in opposing corners of the White House.

H. The drones would detonate at different times, and his plan was to "place each in various spots swap for confusion." Moreover, his plan entailed, "Secret Service to find the Point A drone and Point B drone and deactivate each before exploding," acting as decoys from the actual explosives. Defendant also reported that he even feels that Point C may be discovered and located prior to detonation, but even if it is deactivated by the Secret Service, they won't know about "Point ZZZ." The defendant named the fourth drone "ZZZ" to stand for

"Sleep time," indicating if detonated, "President Trump will sleep forever." He said drone ZZZ would carry a larger bomb "to be more deadly." The defendant said he would continue revising his plan to include exact coordinates for landing the drones.

I. The SA asked defendant about alternative plans, and the defendant said, "I will use my plan to kill Trump . . . I will kill Trump . . . as soon as I get out of here, I'm going straight there to start my plan." Defendant said he would attach bombs to Frisbees and fly them over the White House fence, if needed. He added he would "do some suicide shit," if necessary. Defendant showed the SA a list of ingredients to make a bomb, a timeline for the attack on the White House, a bus reservation from Dubuque, Iowa to Washington D.C., and the White House floor plan on his cell phone.

J. The SA interviewed a physician at Mercy Hospital, on May 2, 2019. The physician, indicated his concern was defendant's continued desire to kill the President, despite prescribed medications. The doctor said defendant's intensity of desire was unchanged, and he was unresponsive to prescribed medications.

K. Defendant told the SA he had previously been interviewed by the Secret Service in Richmond, California (2012-2013) and Fayetteville, North Carolina (2016) after threatening to kill President Obama, and in Louisville, Kentucky (2018) after threatening to kill President Trump. The defendant said he saw himself "in prison or dead" in five years, and specified he would go to prison for attempting his plan or be killed in the process of attempting the plan. The defendant said he "feels like a different person," with increased energy, when he focused on his attack plan.

L. Defendant said he told his doctors he had "an inner core that makes his mind stay committed to carrying out this attack and that his inner core won't leave his mind until he at least tries or acts on his feelings." He added, "Thoughts cause intentions that cause actions." Defendant reported he was "obsessed" with firearms and knives. He said, "guns allow you to take someone's soul," and all you have to do is "up that and they gone." Regarding knives, he said he sharpens knives to relieve stress. He added that he thinks about, "stabbing someone, then sticking his finger into the wound, swirling his finger around feeling the inside of his victim and then tasting the blood by

Jill Johnston
Assistant Federal Defender
*United States v. Christian M. Delatorre*
October 21, 2019
Page 6

>
> licking his finger." He said he once tasted his friend's blood, when he was bleeding, and while he did not enjoy the taste, he "felt good about doing it."
>
> (√) M. Defendant said he wrote and produced his own music, with songs such as, "Fuck Trump," "Fuck Trump 2," and "Murder."
>
> (√) N. Defendant's cell phone contained various images, including a note dated April 19, 2019 at 6:02 p.m. which stated: "1600 Pennsylvania Ave NW, Washington D.C. 20500; 5.4-5.9 miles from the airport, 20-35$ In a taxi; 202 456 7900 yellow taxi; supplies pickup 10am; build process 11am; Ignition of blueprint plan 1130; Point a 45 secs point b 27 secs point c 20 secs and point d 5 secs; Place each in various spots swap for confusion." Defendant's cell phone also contained a Greyhound bus reservation (number 25658760) from Dubuque, Iowa at 3:35 p.m. to Washington D.C. at 5:15 p.m. on April 24, 2019. The phone also contained floor plans for the White House.

## SENTENCING PROVISIONS

9. (√) Defendant understands and agrees to be sentenced based on facts to be found by the sentencing judge by a preponderance of the evidence and agrees facts essential to the punishment need not be (1) charged in the Indictment; (2) proven to a jury; or (3) proven beyond a reasonable doubt. The Court may also consider other information concerning the background, character, and conduct of defendant.

10. (√) During plea negotiations the parties may have discussed how various factors could impact the Court's sentencing decision and the determination of the advisory sentencing guidelines range. The parties agree, however, that discussions did not result in any express or implied promise or guarantee concerning the actual sentence to be imposed by the Court. Defendant understands the Court is not bound by the stipulations of the parties, nor is it bound by the sentencing range as determined pursuant to the sentencing guidelines. This plea agreement provides for no guarantee concerning the actual sentence to be imposed. Defendant further understands defendant will have no right to withdraw defendant's guilty plea if the sentence imposed is other than defendant hoped for or anticipated.

11. (√) The parties stipulate and agree the United States Sentencing Guidelines should be applied, at least, as follows:

   (✓) **A. Base Offense Level - (Chapter 2):** Pursuant to USSG §2A6.1, the appropriate base offense level is 12.

   (✓) **B. Acceptance of Responsibility (Chapter 3 adjustment):** The United States agrees for purposes of USSG §3E1.1(b) that defendant timely notified authorities of defendant's intention to enter a guilty plea. However, in the event the offense level is determined to be Level 16 or higher the United States may, in its sole discretion, make or withhold a motion under USSG §3E1.1(b) based on any interest identified in USSG §3E1.1 or the commentary thereto.

   (✓) **C. Criminal History (Chapter 4):** No agreement has been reached regarding defendant's criminal history. The parties reserve the right to contest the Probation Office's determination of defendant's criminal history and criminal history category under Chapter Four of the sentencing guidelines. In addition, defendant understands that, if defendant's criminal history would result in a higher base offense level under any guideline, the government is free to seek such a base offense level.

   (✓) **D.** No other agreements have been reached, and the parties are free to pursue and litigate any and all other applicable adjustments, departures, or cross-references under the United States Sentencing Guidelines, and any variances of any kind from the advisory guideline range, in any amount, in either direction.

  12. (✓) Defendant, defendant's attorney, and the United States may make whatever comment and evidentiary offer they deem appropriate at the time of the guilty plea, sentencing, or any other proceeding related to this case, so long as the offer or comment does not violate any other provision of this agreement. The parties are also free to provide all relevant information and controlling authority to the Probation Office and Court for use in preparing and litigating adjustments, enhancements, or departures scored in the presentence report, including offering statements made by defendant at any time.

  13. (✓) The parties are free to contest or defend any ruling of the Court, unless otherwise limited by this agreement, on appeal or in any other post-conviction proceeding.

  14. (✓) Defendant understands that, pursuant to the Victim and Witness Protection Act, Title I of the Justice for All Act, and the regulations promulgated under the Act by the Attorney General of the United States:

Jill Johnston
Assistant Federal Defender
*United States v. Christian M. Delatorre*
October 21, 2019
Page 8

    A.    The victim of a crime is given the opportunity to comment on the offense and make recommendations regarding the sentence to be imposed. Defendant understands the victim's comments and recommendations may be different from those of the parties to this agreement.

    B.    The government is required to consult with victims of serious crimes to obtain their views regarding the appropriate disposition of the case against defendant and to make any such information regarding sentencing known to the Court. Defendant understands any victim's opinions and recommendations may be different from those presented by the government.

    C.    The government is required to "fully advocate the rights of victims on the issue of restitution unless such advocacy would unduly complicate the sentencing proceeding," and the Court is authorized to order restitution by defendant to victims of crime, including, but not limited to, restitution for property loss, personal injury, or death.

## CONDITIONS OF SUPERVISION

15. _( V)_ If probation or a term of supervised release is ordered, the parties are free to seek whatever conditions they deem appropriate.

## FINANCIAL MATTERS

16. _( V)_ Defendant agrees to pay a special assessment of $100, as required by 18 U.S.C. § 3013. Defendant may pay the special assessment to the Clerk of Court using the enclosed payment coupon. Defendant or defendant's representative will send or deliver the special assessment payment to the U.S. District Clerk of Court, 111 Seventh Avenue, SE, Box 12, Cedar Rapids, IA 52401. If payment is made in the form of a check or money order, it should be made out to the "U.S. District Clerk of Court."

17. _( V)_ Defendant understands the Court may order defendant to pay restitution to all identifiable victims of the offense(s) to which defendant is pleading guilty. Defendant agrees to cooperate in the investigation of the amount of loss and the identification of victims. Any restitution obligation should be paid to the Clerk of Court for eventual disbursement to the victim. Complete restitution shall be due and payable at or before the time of sentencing. Defendant agrees to cooperate in efforts to collect the restitution obligation, by [e.g. set-off of program payments, execution on exempt and non-exempt property or] any other means the United States deems appropriate. Defendant understands imposition or payment of

restitution will not restrict or preclude the filing of any civil suit or administrative action. Defendant agrees any restitution imposed will be non-dischargeable in any bankruptcy proceeding and defendant will not seek a discharge or a finding of dischargeability as to the restitution obligation.

## GENERAL MATTERS

18. ( V) Defendant shall not violate any local, state, or federal law during the pendency of this agreement. Any law violation, with the exception of speeding or parking violations, committed by defendant will constitute a breach of this agreement and may result in the revocation of the entire agreement or any of its terms. Defendant or defendant's attorney shall notify this office within 48 hours if defendant is questioned, charged, or arrested for any law violation.

19. ( V) If defendant violates **any** term or condition of this plea agreement, in **any** respect, the entire agreement will be deemed to have been breached and may be rendered null and void by the United States. Defendant understands, however, the government may elect to proceed with the guilty plea and sentencing. These decisions shall be in the sole discretion of the United States. If defendant does breach this agreement, defendant faces the following consequences: (1) all testimony and other information defendant has provided at any time (including any stipulations in this agreement) to attorneys, employees, or law enforcement officers of the government, to the Court, or to the federal grand jury may and will be used against defendant in any prosecution or proceeding; (2) the United States will be entitled to reinstate previously dismissed charges and/or pursue additional charges against defendant and to use any information obtained directly or indirectly from defendant in those additional prosecutions; and (3) the United States will be released from any obligations, agreements, or restrictions imposed upon it under this plea agreement.

20. ( V) Defendant waives all claims defendant may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment to the Constitution. Defendant also agrees any delay between the signing of this agreement and the final disposition of this case constitutes excludable time under 18 U.S.C. § 3161 et seq. (the Speedy Trial Act) and related provisions.

21. ( V) The agreement to forego filing charges is conditional upon final resolution of this matter. If this agreement is revoked or defendant's conviction is ultimately overturned, the United States retains the right to file charges that were not filed because of this agreement. Uncharged offenses may be filed if: (1) the plea agreement is revoked, or (2) defendant successfully challenges defendant's

conviction through a final order in any appeal, cross-appeal, habeas corpus action, or other post-conviction relief matter. A final order is an order not subject to further review or an order that no party challenges. The United States may file uncharged offenses within 90 days of the filing date of any final order seeting aside the conviction in this case. Defendant waives all constitutional and statutory speedy trial rights defendant may have. Defendant also waives all statute of limitations or other objections or defenses defendant may have related to the timing or timeliness of the filing or prosecution of charges referred to in this paragraph.

## WAIVER OF APPEAL

22. ⎵√⎵ After conferring with defendant's attorney and after being advised of defendant's appeal rights, defendant knowingly and voluntarily waives defendant's right to appeal the conviction. Defendant also waives the right to file post-conviction relief actions, including actions pursuant to 28 U.S.C. § 2255, 28 U.S.C. § 2241, *coram nobis*, and motions to reconsider or reduce defendant's sentence. This waiver does not, however, prevent defendant from challenging the effectiveness of defendant's attorney after conviction and sentencing. Defendant does not have any complaints at this time about the effectiveness of defendant's attorney. The waivers set out above relate to any issues that now exist or that may arise in the future. Defendant agrees to these waivers in order to induce the government to accept the provisions and stipulations of this plea agreement, to avoid trial, and to have defendant's case finally concluded. Defendant understands that, at the conclusion of the sentencing hearing, the Court will note defendant's appeal rights are limited by this waiver. No assurances or promises have been made by any party as to what defendant's ultimate sentence will be.

## ACKNOWLEDGMENT OF DEFENDANT'S UNDERSTANDING

23. ⎵√⎵ Defendant acknowledges defendant has read each of the provisions of this entire plea agreement with the assistance of counsel and understands its provisions. Defendant has discussed the case and defendant's constitutional and other rights with defendant's attorney. Defendant understands that, by entering a plea of guilty, defendant will be giving up the right to plead not guilty; to trial by jury; to confront, cross-examine, and compel the attendance of witnesses; to present evidence in defendant's defense; to remain silent and refuse to be a witness by asserting defendant's privilege against self-incrimination; and to be presumed innocent until proven guilty beyond a reasonable doubt. Defendant agrees defendant's attorney has represented defendant in a competent manner and has no complaints about that lawyer's representation. Defendant states defendant is not now on or under the influence of, any drug, medication, liquor, or other substance,

Jill Johnston
Assistant Federal Defender
*United States v. Christian M. Delatorre*
October 21, 2019
Page 11

whether prescribed by a physician or not, that would impair defendant's ability to fully understand the terms and conditions of this plea agreement.

24. _CV_ Defendant acknowledges defendant is entering into this plea agreement and is pleading guilty freely and voluntarily because defendant is guilty and for no other reason. Defendant further acknowledges defendant is entering into this agreement without reliance upon any discussions between the government and defendant (other than those specifically described in this plea agreement), without promise of benefit of any kind (other than any matters contained in this plea agreement), and without threats, force, intimidation, or coercion of any kind. Defendant further acknowledges defendant's understanding of the nature of each offense to which defendant is pleading guilty, including the penalties provided by law.

25. _CV_ Defendant further understands defendant will be adjudicated of the offense to which defendant will plead guilty and will thereby be deprived of certain rights, including, but not limited to, the right to vote, to hold public office, to serve on a jury, and to possess firearms and ammunition. Defendant understands the government reserves the right to notify any state or federal agency by whom defendant is licensed, or with whom defendant does business, of the fact of defendant's conviction.

## VERIFICATION

26. _CV_ This letter constitutes the entire agreement between the parties. No other promises of any kind, express or implied, have been made to defendant by the United States or its agents. No additional agreement may be entered into unless in writing and signed by all parties. The agreement will not be deemed to be valid unless and until all signatures appear where indicated below.

If this agreement is acceptable, please have your client indicate acceptance by placing initials on the line preceding each of the above paragraphs and by signing below where indicated. By initialing each paragraph and signing below, defendant acknowledges defendant has read, fully understands, and agrees to each paragraph of this agreement. Please return all enclosures, completed and signed, with this signed letter to the U.S. Attorney's Office.

Please complete the enclosed Consent to Proceed Before the Magistrate Judge. This document is needed to allow the Magistrate Judge to receive defendant's guilty plea.

Finally, please remember to pay the special assessment as agreed above.

Jill Johnston
Assistant Federal Defender
*United States v. Christian M. Delatorre*
October 21, 2019
Page 12

Thank you for your cooperation.

Sincerely,

PETER E. DEEGAN, JR.
United States Attorney

By, *Richard L. Murphy*

RICHARD L. MURPHY
Assistant United States Attorney

**ENCLOSURES:**
Financial Statement Form
Special Assessment Payment Coupon
Authorization to Release Credit Information
Consent to Proceed Before Magistrate Judge

The undersigned defendant, with advice of counsel, accepts the terms of this plea agreement. The undersigned Assistant United States Attorney accepts the terms of the executed plea agreement.

_____ 10/30/19
CHRISTIAN M. DELATORRE    Date
Defendant

_____ 10/30/19
RICHARD L. MURPHY    Date
Assistant United States Attorney

_____ 10/31/19
JILL JOHNSTON    Date
Attorney for Defendant